LITTLE
ROCK,
Jan'y 1839
THE STATE
vs.
GRAHAM.

THE STATE *against* JOHN E. GRAHAM.

ERROR *to Pulaski Circuit Court.*

Prior to the adoption of the constitution of this state, the jurisdiction of the
Circuit Courts, in all criminal cases of which they had cognizance was ex-
clusive.

The constitution confirms in the Circuit Court a part of the powers with which
they were then invested by the statute, without divesting them of any other
power conferred upon them by law.

There is no conflict between the provisions of the statute conferring on the
Circuit Courts exclusive jurisdiction in criminal cases, and the appellate
jurisdiction conferred by the Constitution on the Supreme Court.

The appellate jurisdiction of the Supreme Court, though co-extensive with the
state, is no where defined in the .constitution. It depends upon the law as
it stood when the constitution was adopted, subject to such alterations as
the legislature prescribe by law.

The legislature may therefore, by law, at any time change or modify the
different subject matters to which the appellate power of the Supreme Court
shall extend, *making it cover more or less space,* as they shall think proper.

The provisions in the schedule of the constitution, and the act of 1836, leave
the jurisdiction and powers of the Circuit Court over criminal cases, precisely
as they stood when the constitution was adopted.

RINGO, *Chief Justice,* delivered the following opinion in two cases,
the two being precisely alike in every respect:

This is an indictment originally prosecuted in the City Court of Lit-
tle Rock, against the defendant, for betting at a prohibited game com-
monly called faro; upon which the defendant was convicted on his
own .confession of guilt, and a fine imposed upon him, and judgment
therefor given in the City Court. To reverse which the defendant
prosecuted a writ of error out of this court, whereby a transcript of the
record, proceedings and judgment against him in the City Court, was
brought before this court, and the judgment reversed, and the case re-
manded to the Circuit Court of Pulaski county, to be there proceeded
in according to law, and the opinion of this court delivered therein.
The Circuit Court on the appearance of the case therein, ordered
and permitted the mandate of this court to be filed and entered on the
record; and afterwards permitted the defendant to plead to the juris-
diction of the court, and upon the issue formed thereupon, decided
that the Circuit Court had no jurisdiction of the case, and gave a final
judgment, "that the defendant be discharged, and go hence without
day."

To this opinion and judgment the attorney prosecuting for the State excepted and filed his bill of exceptions, which was made a part of the record; and thereupon prosecutes this writ of error, in the name of the State, to reverse said judgment.

The first question presented is this: Is the State entitled by law to the writ of error. This right is denied by the defendant, and will be examined by the court. The case originated in the city court, but as to the present question, it must be governed by the same principles and laws as *if* it had been originally prosecuted in the Circuit Court; the question therefore, from the extent of its appreciation, is one of interest and importance, and is not free from difficulty.

Prior to the adoption of the constitution, the jurisdiction of the Circuit Court in all criminal cases of which they had cognizance, was " exclusive."

The 5th section of the act of Congress approved April 17, 1828, *Ark. Dig. p.* 42, expressly prohibited the right of appeal in criminal cases, from the Circuit Court to the Superior Court; and the Legislature by an act approved October 22, 1828, *Ark. Dig. p.* 122, *S.* 2, provided that the Circuit Courts should have "*the exclusive cognizance of all criminal cases within their respective circuits,*" whereby the whole jurisdiction of criminal cases became vested in the Circuit Court.

These Statutory provisions were in force when the constitution was adopted, and the change from a Territorial to a State form of Government, took place, except so far as the latter act, was modified by the act of 1835, in conferring upon the City Court of Little Rock, the exclusive original of all criminal cases, less than felony at common law, arising within the incorporated limits of said city; a modification which has no influence on the question now under consideration.

The constitution in section 3rd of artitle VI, provides that " the Circuit Court shall have original jurisdiction over all criminal cases which shall not be otherwise provided for by law; and exclusive original jurisdiction of all crimes amounting to felony at the common law."

And in section 2, of the same article, it is provided that "the Supreme Court, except in cases otherwise directed by this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the State, under such restrictions and regulations as may from time to time be presented by law."

LITTLE
ROOK.
Jan'y 1839

THE STATE
vs.
GRAHAM.

These are believed to be the only provisions in the constitution which have any relation to the subject; and they do not direct the Circuit Courts of their " *exclusive* " jurisdiction in criminal matters; for between the grant of original jurisdiction conferred by the constitution, and the grant of " exclusive " jurisdiction given by the Statute, there is no conflict: because it is obviously true, that the same tribunal may have the original, sole, and final adjudication of any given case or class of cases, and whenever this is the case, the jurisdiction of such tribunal over such case or class of cases, is exclusive; but whenever the jurisdiction of any case or class of cases, is distributed between different tribunals, as where one has original, and another appellate jurisdiction over the same case, neither tribunal has the exclusive jurisdiction thereof. The grant in the constitution confirms in the Circuit Courts, a part of the powers with which they were then invested by the Statute, without divesting them of any other power, conferred upon them by law.

Nor is there any conflict between the provisions of the Statute conferring on the Circuit Courts exclusive jurisdiction in criminal cases, and the appellate jurisdiction conferred by the constitution on the Supreme Court. The latter, although it is declared to be co-extensive with the State, is no where defined in the constitution, that is, the constitution wholly omits to point out the subjects to which the appellate jurisdiction of the Supreme Court shall extend, or to indicate in any manner whether it shall be exercised over the decisions of the Circuit Courts, the county courts, the probate courts, corporation courts, or justices of the peace, or all, any or either of them: therefore the whole appellate power and jurisdiction of the Supreme Court is made by the constitution itself to depend upon the law as it stood when the constitution was adopted; subject, however, to such alterations as the legislature should from time to time prescribe by law—thereby confiding to the law and the legislature without any restraint whatever, the whole right and the exclusive privilege of specifying the particular subject to which the appellate power of the Supreme Court shall extend, and regulating and prescribing the manner in which they shall be brought before the court, whether by appeal, writ of error, or otherwise; also at what time, by whom, and from the decision of what court they shall or may be so brought up; consequently the legislature may by law at any time change or modify the different subject matters to which the appellate power of this court shall extend, *making it cover more or less space,* as they

shall think proper. If this view of the appellate jurisdiction of the Supreme Court be correct, as from a careful examination of the whole judiciary system and every branch thereof, and of the powers of each, as conferred or limited by the Constitution, we are induced to believe it is, it follows as a necessary consequence, that the exclusive jurisdiction of the Circuit Courts over criminal matters is not affected or impaired by any thing contained in the constitution. The schedule in the constitution, section 2, declares, " that all laws now in force in the Territory of Arkansas, which are not repugnant to the constitution, shall remain in full force until they expire by their own limitations, or be altered or repealed by the General Assembly."

And the act approved 7th November, 1836, section 3, provides that the Circuit Courts " shall have cognizance and legal jurisdiction " " of all pleas in the State, and criminal matters of what nature or denomination soever," and declares that said courts shall " have full powers and authority to give judgment and award execution and other process necessary to the action of said Courts thereupon, as heretofore belonged to the Circuit Courts in the late Territory of Arkansas, and have use exclusive and enjoy the same powers, authorities, rights, and privileges, as were, had, used, and enjoyed, by the said Circuit Courts heretofore existing, except where it is otherwise directed by this or some other act; or where such powers, authorities, rights, or privileges, or any of them, may be inconsistent or repugnant to the present form of government.

These provisions in the schedule contained in the constitution, and the act of 1836, were evidently intended to leave the jurisdiction and powers of the Circuit Courts, over criminal cases, precisely as they stood when the constitution was adopted; and we think it is shown satisfactorily, from the concise view of the subject already presented, that they are not in conflict with the constitution, or "inconsistent or repugnant to the present form of government,"—and of course the jurisdiction of criminal matters, in the Circuit Courts, remained "exclusive" after the change of government, precisely as it stood before the change: and the powers vested in the Supreme Court, and the judges thereof in vacation, to issue writs of error and supersedeas, does not, in our opinion, have the least influence upon the present question; because if we are right in the conclusion, that the appellate jurisdiction of the Supreme Court is made by the constitution to depend upon the law for its application to, and exercise over, any specified subject, it

LITTLE
ROCK,
Jan'y 1839

THE STATE
*vs.*
GRAHAM.

necessarily results that it can never be exercised in any case, without the aid of the law, in ascertaining and defining the particular case, class of cases, or subject matter, to which it shall extend, which being thus ascertained, but no provision made by law, whereby the subject may be brought before the Supreme Court, the court under the authority expressly given to it, to issue writs of error, supersedeas, &c., can, by means of some of the writs which it is authorized to issue, cause the case to be brought before it, to enable it to exercise appellate jurisdiction over the subject; and the court is therefore, notwithstanding the omission in the law, authorized to hear and determine the cause; and this we understand to be the extent of the power conferred by the constitution, in the clause which empowers the Supreme Court, or the judges thereof in vacation, to issue the writs therein enumerated, or thereby authorized, so far as they relate to, or can be applied in, the exercise of the appellate power by this court, unless they may be also used to bring before the court cases which are directed by law, to be brought up in some different manner, prescribed by law;— a proposition, the truth of which we doubt, and do not decide, as it can have have no influence on the question before us. And therefore we say, a fortiori, the Supreme Court cannot exercise appellate jurisdiction in any case, over which it is provided by law, that another tribunal shall have " the exclusive jurisdiction;" and upon this ground the judges of this court have uniformly refused to take jurisdiction of, or exercise any appellate power in regard to criminal matters prosecuted in the Circuit Courts, prior to the taking effect of the act to regulate criminal proceedings, approved February 13, 1838, by refusing to issue writs of error or supersedeas upon application therefor made, without looking into the case further than to see that the Circuit Court had jurisdiction thereof.

The act of 1838, above mentioned, contains the following provisions: "Sec. 213. In all cases of final judgment, rendered upon any indictment, an appeal to the Supreme Court shall be allowed, if applied for at the term at which such judgment may be rendered. Sec. 214. Writs of error on application therefor shall issue, of course, in vacation, as well as in term time, out of the Supreme Court, on final judgment in criminal matters.

These provisions are broad and comprehensive as language can make them. They refer as appropriately to one party as to the other, and embrace every criminal matter upon which a final judgment is

rendered; and authorize an appeal to the Supreme Court if applied for at the term at which the judgment is given, or a writ of error out of the Supreme Court, which shall issue of course, on application, in vacation, as well as in term time.

These provisions confer valuable legal rights; but upon whom are they conferred? The language of the grant is general, and may apply, as well to the State as to the defendant, unless they are restrained by the context, or some other part of the law, or prohibited by the constitution. We have looked attentively into the whole law upon this subject, as well as the constitution, without being able to discover any thing by which the right is, or was designed to be, restricted to either party, in exclusion of the other, or prohibited to either. And there appears to us to be as much propriety in extending it to the one as to the other. It certainly was not designed to impair the existing rights of either, or to place them on unequal ground, by a discrimination between them, the policy and justice of which would be at least questionable; for it must be conceded that the claims of public justice occupy in morals and in political economy, as elevated a position as any considerations of mere private right, and demand of the constituted authorities of the country, equal favor and protection; and the law as stood when the enactments under consideration were made, so regarded them, and denied both parties the right of appeal. What, then, was the object of the legislature in enacting the provisions before us? The evil thought to exist, and which it was the principal design to remedy, by these provisions, it is confidently believed, consisted in the great uncertainty and contrarity of decision, in the different courts in criminal matters, arising from the fact of their being no superior tribunal authorized by law to reverse their adjudications, and thereby establish a uniform rule of decision in that class of cases throughout the State; and therefore with a view to the accomplishment of this most desirable object, the appellate power of the Supreme Court was extended by the act under consideration, to this class of cases. If this was not the great object and design of these provisions, we are wholly at a loss to discover what they could have been: for no one who is familiar with the various provisions of our criminal laws, and acquainted with the history of the country at the period of its passage, can entertain the opinion that there existed in the mind of any rational person, the least apprehension of any exercise of any undue rigor or oppression towards the accused, either on the part of the

V

LITTLE
ROCK,
Jan'y 1839

THE STATE
vs.
GRAHAM.

courts or juries, to which their trial was then exclusively confided; but on the contrary, it is a notrious fact, amounting almost, if not altogether, to a reproach upon the authorities entrusted with the administration of criminal justice, that from their great lenity and indulgence to the accused, and the too easy ear given to slight excuses, and frivolous exceptions, not extending to, or affecting the merits of the accusation, or tending to establish the guilt or confirm the innocence of the accused, many wicked and notorious offenders against the criminal laws but too often escaped the richly merited punishment demanded against them for the violation of law which they had committed. And independently of this, the constitution and laws, by investing the accused with the right of a speedy public trial, by an impartial jury of his own selection, and the right of challenge, and of changing the venue, with the privilege of a new trial, whenever a verdict should be obtained against him by any mistake, either of law or the facts, or by any improper conduct on the part of the jury; besides numerous other privileges conferred by law, in addition to the ultimate right of appeal to the executive authority for a pardon, had thrown around him such ample means of security and protection, that no one ever apprehended the least danger of any innocent person sufferring punishment from any maladministration of the criminal laws of the country; consequently, if the facts existed as we have stated them, and that they did so exist cannot, in our opinion, be denied; because they comprise a part of the public history of the country, and are known to every observing member of the community; and therefore the object of the enactment under consideration, could not have been to obviate the evil, of any real or supposed danger of oppression or injustice towards the defendant in criminal prosecutions: wherefore it is legitimate to presume that the legislature did not intend to restrict the right of appeal, and have a writ of error in criminal matters to the defendant only; and the object which we have supposed they intended to accomplish thereby will be more fully answered by extending the right equally to both parties, according to the evident intention of the Legislature.

We are therefore of the opinion that the State is by law entitled to the writ of error in this case.

We are aware of an objection which may urged against the exercise of this right, on the part of the State, in a different class of cases, where the punishment may extend to life or limb; because of the

provision contained in the constitution of the United States, as well as the constitution of this State—"that no person shall, for the same offence, be twice put in jeopardy of life or limb;" but however that class of cases may be effected by the provision just recited, is not a question now before us; and we do not therefore express or even intimate any opinion upon it. The provision can have no application to, or influence upon, the right claimed for the State in this case; because the legal punishment for the offence charged in the indictment does not affect either the life or limb of the defendant—it being a pecuniary mulct only.

Having disposed of the preliminary question raised in this case, we will now proceed to dispose of the only remaining question presented by the record and assignment of errors: that is, did the Circuit Court err in refusing to take jurisdiction of, and dismissing the case, and rendering judgment, that the defendant be discharged, and go hence without day. This question was in effect decided by the court, at the last term, when it was adjudged, " that this case be remanded to the Circuit Court of Pulaski county, to be there proceeded in according to law, and in comformity with the opinion " of this court, then delivered in this cause.

We have now, again, carefully re-examined this question, and entertain no doubt of the correctness of the judgment in this respect, then pronounced. It is a question depending solely on the act of the Legislature, approved February 21, 1838, entitled " An act supplementary and amendatory to an act, entitled ' an act to incorporate the City of Little Rock,' approved November 2, 1835," in the 8th section of which, it is among other things provided " that the jurisdiction of all offences heretofore given to, and extended by, the City Court of Little Rock, which is not by this act given to the justices of the peace therein, is hereby transferred to the Circuit Court of the County of Pulaski, which shall hereafter have and entertain full and complete jurisdiction of all such offences." The language here used by the Legislature is clear, perspicuous, and comprehensive, admitting of no doubt, and incapable of receiving a different interpretation from that put upon it by this court at the last term. The case is embraced within the express letter of the law, and it was not given to the justices of the peace mentioned in the act, or any or either of them. The Circuit Court therefore unquestionably had jurisdiction thereof, and erred in refusing to exercise its jurisdiction over the case,

LITTLE ROCK; and in dismissing the case and giving final judgment, that the defend-
Jan'y 1839 ant be discharged and go hence without day; and for this error the
THE STATE judgment must be, and the same is hereby reversed, annulled, and set
vs. GRAHAM, aside.

But suppose this court had mistaken the law, and pronounced an er-
roneous judgment in remanding the case to the Circuit Court of Pu-
laski county, and in requiring that court to take cognizance there-
of, and proceed to adjudicate the case, was it competent for the court
to question the correctness of the decision and judgment, and refuse
obedience to the mandate? Certainly it was not. For if that court
disregard the judgment and mandate in this case, it could, with equal
propriety in every other case, and thus by the usurpation of powers be-
longing exclusively to a superior, constitute itself into a tribunal of su-
supervision over the proceedings, judgments, and decrees of the Su-
preme Court, in direct violation of the constitution and laws of the,
land.

Wherefore the judgment of the Circuit Court of Pulaski county
given in the case of the defendant, ought to be, and the same is hereby
reversed, annulled, and set aside with costs, and the case remanded
to said Circuit Court; and the said Circuit Court is hereby ordered and
directed to take cognizance of this case, and proceed thereupon, to ad-
judicate this case upon the matters in controversy between the parties,.
according to law, and in a manner not inconsistent with this opinion,.
or the opinion of this court pronounced in this case at the last term
thereof.