## ANTHONY, EX PARTE.

That portion of the statutes of this State, denying to a party sued in an action on a change ticket, any stay of execution, appeal, certiorari, writ of error, or injunction, is unconstitutional and void.

The circuit courts, in exercising a superintending control over the county courts, act not in the exercise of appellate, but of original jurisdiction.

As to the appellate jurisdiction of the supreme court, the cases of *The State vs. Ashley et al.*, 1 *Ark. Rep.* 279, and *Woods Ex parte*, 3 *Ark.* 532, cited, relied upon, and affirmed; and that of *The State vs. Graham*, 1 *Ark.* 428, explained and restricted.

The supreme court has a superintending control over all the inferior courts.

The jurisdiction of the supreme court, conferred by the constitution, cannot be divested by any legislative act; but the legislature is fully competent to prescribe the order of proceeding to be observed, in the exercise of its powers.

Where a proceeding before a justice of the peace is about to be commenced upon a written instrument, that instrument must first be filed, before a summons can legally issue.

A summons to answer an action on account, will not support a proceeding upon a written instrument. *Reeves vs. Clark*, *ante*, cited and affirmed.

The proceedings before a justice of the peace must show that the subject matter of suit is within his jurisdiction; otherwise the proceeding will be regarded as *coram non judice*, and void.

THIS was a writ of certiorari, issued by the order of one of the judges of this court in vacation, founded on the petition of Phillip L. Anthony, for the purpose of bringing into this court the proceedings and judgment of a justice of the peace, to the end that, by the adjudication of this court, they might be revised and corrected, and be either affirmed or quashed. The return of the justice, to whom the writ was addressed, shows that a suit was instituted before him by William A. Dawdy against Phillip L. Anthony, the petitioner in this case, founded on a certain instrument in the words and figures following, to wit:

"$ 1, A.           $ 1, No. 45.

### ANTHONY HOUSE.

This ticket will be taken for one dollar, Arkansas money, due the "Anthony House." A five dollar bill, Arkansas money, will always be exchanged for that amount in tickets.

*Little Rock, Arks.*       *Phillip L. Anthony,*

*Nov. 11th, 1842.*        *- Proprietor.*"

That the summons issued by the justice of the peace, required Anthony to appear before him, at a specified time and place, to answer unto said Dawdy "in an action on ac't." That the summons was duly executed, and that both Dawdy and Anthony appeared before him at the time and place specified in the summons, and that the defendant, Anthony, by his counsel, argued the case at length; that the justice, after hearing the argument, was satisfied that the defendant did draw and sign the change ticket sued on, and thereupon gave judgment that the plaintiff recover against him the sum of one dollar debt, and all his costs in the case expended; that the defendant prayed an appeal from said judgment to the circuit court, made such affidavit as the law requires upon the taking of an appeal from a decision made in a justice's court, to the circuit court, and offered therefor bond and good security, and that the justice refused to grant his prayer, or allow any appeal to be taken from said judgment; and that he issued an execution on said judgment.

*B. J. Borden* and *E. Cummins,* for Anthony.

*By the Court,* RINGO, C. J. Upon the case thus shown, two prin-

cipal questions arise.    *First,* Is the instrument, upon which the action is founded, a change ticket, note, bill, or check, within the purview of either the statute approved February 14th, 1838, *Rev. St. Ark. ch.* 24, *p.* 176, or that approved 17th December, 1838, entitled "An act to prohibit the issuing of small bills, notes, or change tickets," *Acts* 1838, *page* 13?

*Second,* Does the legislature possess the power of making the judgments of justices of the peace final?

These questions will be disposed of in the order in which they are stated.

The principal design of the statutes of 14th February and 17th December, 1838, mentioned above, and also of another statute approved November 25th, 1837, *Rev. St. Ark., ch.* 119, was to free the community entirely from the circulation, as currency or change, of every species of small paper, whether issued by corporations, companies, or individuals, and thereby relieve them from all the evils incident to such a circulation.   And to this end the issuing and circulation of such paper was, by the provisions in said statutes contained, inhibited to all persons, companies, and corporations; and such prohibition enforced, not only by the denunciation of criminal punishment against such as should issue, put into circulation, sign, countersign, or indorse such paper, and of heavy penal responsibilities against such as should vend, pass, receive, or offer it in payment; but also by making the drawer and every individual who should sign, indorse, or affix his name thereto, responsible to the holder, or owner thereof, for the amount therein mentioned, in gold or silver, notwithstanding any conditions therein specified that payment will be made when the sum of five dollars is presented, or in bank notes, or that it will be received in payment of debts; and also by excluding from every judgment thereupon recovered, the allowance of any stay of execution, appeal, certiorari, writ of error, or injunction.

But according to our understanding of these statutory provisions, they embrace only such instruments, as purport to be for five dollars, or a sum under five dollars, and were, by the maker, drawer, issuer, indorser, or other person affixing his name thereto, designed to circulate from hand to hand as currency or change, and such was the in-

terpretation or exposition of them by this court, in the case of *Van Horne vs. The State*, decided at the last term. Therefore to charge any party to them, under the provisions of said statutes, these facts must be established, or in some manner appear; otherwise the terms and conditions specified in the instrument must be observed, and substantially complied with before any right of action accrues thereon to the holder or owner; because it is the effect and operation of these statutory provisions alone upon such instruments, that make the conditions inserted therein void, and attach to them an absolute legal obligation to pay to the holder or owner, the amount for which they purport to be payable, in gold or silver, notwithstanding the stipulations or conditions to the contrary inserted therein.

The instrument upon which this suit is founded, according to our understanding of the language used, imports on its face that it was designed to be used and circulated as, and for the purposes of, change in the small business transactions of the community, or at least, in such transactions with the proprietor or keeper of the Anthony House; but even if these facts did not appear upon the face of the instrument, and were not, as we consider them to be, legally deducible therefrom, it is clearly shown by the petition of Anthony, for the writ of certiorari, that they were either admitted or proven on the trial before the justice of the peace. Besides, we should consider ourselves warranted in inferring the same from the language used by the justice without reference to the petition. He states, on his docket, that "when the defendant's counsel argued the cause at length, the court, after hearing the argument, was satisfied that the defendant did make and assign the change-ticket sued on this case." The justice, it is true, does not in language say that his judgment, as to the character of the instrument, was founded on testimony adduced before him, but such would be the legal presumption, unless the facts were admitted by the defendant; because, in forming his opinion he was not warranted by law in considering any thing else, and he must be presumed to have discharged his official duty in a manner strictly legal, until the contrary is affirmatively shown. We are therefore, upon every view of the subject, satisfied that the instrument sued on

is a change ticket within the purview of the provisions of the statutes cited above.

Both the statute of February 14th, and that of December 17th, 1838, make the judgment of the justice of the peace final in all actions founded upon any instrument embraced by their provisions, when given against the defendant; and the former expressly forbids the allowance to him of any stay of execution, appeal, certiorari, writ of error, or injunction, and declares that he shall abide the judgment of the justice. We have therefore to consider and determine whether or not, the legislature is inhibited from making such judgments final and conclusive upon the defendants; or in other words, whether the legislature can, by law, exclude this class of cases from the revising power of the supreme court, and every other intermediate tribunal.

· The solution of this question involves an inquiry into the appellate power of the different tribunals constituting the judiciary department of the government. For if the constitution vests in either one of them appellate jurisdiction over cases adjudicated by a justice, or justices of the peace, by any affirmative grant of such power, it cannot be pretended that the power so conferred, can be divested by the legislature. But if it is not so granted by the constitution it is equally clear, that the legislature may, in its discretion, withhold it from them, as it has done in this class of cases, and thereby make the jurisdiction of the justices of the peace exclusive.

There is certainly no provision in the constitution granting appellate power to either the county, or the probate court, nor is any such power thereby granted to the circuit courts, unless it is given to them by the fifth section of the sixth article thereof, which ordains, that "the circuit courts shall exercise a superintending control over the county courts and over justices of the peace in each county in their respective circuits; and shall have power to issue all the necessary writs to carry into effect their general and specific powers." The jurisdiction vested in the circuit courts, by the third and sixth sections of the same article, is exclusively original; and so far as it is conferred by the third section, it is so expressly declared to be; and although it is not so explicitly declared in the sixth section, yet there can, in our opinion, be no reasonable doubt entertained, that it is the original

cognizance only of matters in equity, that is thereby vested in them; and of this they may be divested, when the general assembly shall establish courts of chancery. The powers, therefore, specially granted to the circuit courts, consist of the original cognizance and adjudication of "all criminal cases which shall not be otherwise provided for by law." The "exclusive original jurisdiction of all crimes amounting to felony at the common law." The "original jurisdiction of all civil cases which shall not be cognizable before justices of the peace, until otherwise directed by the general assembly." The "original jurisdiction in all matters of contract, where the sum in controversy is over one hundred dollars;" and the original "jurisdiction in matters in equity," "until the general assembly shall deem it expedient to establish courts of chancery," together with the power of exercising a superintending control over the county courts and justices of the peace in each county in their respective circuits.

Besides the powers thus specified in, and specially granted by the constitution to the circuit courts, they possess certain other powers, which appertain to all judicial tribunals, and vest in them of necessity upon their creation, and by the simple act creating them; among which is the power of preserving good order in the court, so far at least as may be necessary to enable them to execute the specific powers with which they are invested, and perform the duties enjoined upon them, efficiently and without interruption. This power, therefore, though not specified, is always considered as implied in the grant, and is everywhere maintained on the ground of necessity; and this, as well as all similar powers with which courts are generally invested is embraced by the terms used in the last sentence of the 5th section above quoted, which expressly confers upon the circuit courts, the power of issuing all writs necessary to carry into effect their general and specific powers; which, notwithstanding no new power is thereby conferred upon the courts, clothes them by express grant with a power which they would otherwise have possessed by implication only. But it is otherwise in regard to the superintending control given to the circuit courts over the county courts and justices of the peace; because no such power is at all necessary to the complete and efficient exercise of any other jurisdiction or power with which the con_

stitution invests them; and therefore without this express grant neither court would, by virtue of the constitution alone, have possessed any jurisdiction or power over the other; and hence this must be regarded as a substantive power existing in the circuit courts, by the express grant of the constitution only. The terms of the grant are general, but they import an authority as to the tribunals only, and seem to us to have no reference whatever to parties litigant, or to cases pending in, or decided by, them; and do not in any manner appear to contemplate any direct proceedings by the circuit courts, either against the parties to controversies there pending or determined, or upon the cases or matters there in controversy or adjudicated; and inasmuch as no appellate jurisdiction whatever appears to have been vested by the constitution, in the circuit courts, we consider their power, by virtue of this provision, as extending only to the tribunals mentioned, and consequently the circuit courts can derive no jurisdiction therefrom to adjudicate any case there determined, but are bound in the exercise of their superintending control, to confine their action to such process and proceedings as may be legally taken against the tribunals themselves; and in such case, the court acts not in the exercise of appellate, but of original jurisdiction; and notwithstanding the rights of others may be thereby affected, the tribunal against which the proceeding is taken, or the individual or persons composing it must always in such case, be the party defendant.

The question whether the constitution does or does not invest the supreme court with appellate jurisdiction, has never been expressly before this court for adjudication. It is therefore an open question. The court has, however, in several instances, incidentally noticed it, and upon more occasions than one, either intimated or expressed its opinion in regard thereto. But, inasmuch as the opinions so intimated or expressed, seem to conflict with each other, we have thought proper to review and reconsider the whole subject, and after the most full and deliberate consideration thereof, have come to the conclusion that the opinions, as expressed in the cases of *The State vs. Ashley et al.*, 1 *Ark. Rep.* 279, and *Woods, Ex parte*, 3 *Ark. Rep.* 532, contain the true exposition of the constitution, in respect to the appellate jurisdiction of this court, and that the *dictum* in the case of *The State*

*vs. Graham,* 1 *Ark. Rep.* 428, so far as it purports to assert that appellate jurisdiction is not vested in the supreme court, by the constitution, in certain cases, is incorrect. The superintending control, given by the constitution to the supreme court, over all inferior, and other courts of law and equity, is in no respect different from that possessed by the circuit courts, except in this, that the latter is limited to the county courts and justices of the peace, while the former is extended to all courts in the State. The language of the grant, in both instances, imports the same thing, and the power derived from it must be exercised in like manner by each tribunal; consequently, no appellate jurisdiction is granted thereby to either. Yet the power vested by the constitution in the supreme court, to issue writs of error and supersedeas, certiorari and habeas corpus, mandamus and quo warranto, and other remedial writs, and to hear and determine the same, does, in our opinion, confer upon this court, by express grant, the power of adjudicating all cases determined by any inferior judicial tribunal in the State, where, according to the principles of the common law, the case so determined can, by means of any of the writs aforesaid, be legally and appropriately brought before it, and to this extent the constitution gives to this court an appellate jurisdiction, of which it cannot be divested by any act of the legislature. But the legislature is fully competent to prescribe by law, the order of proceeding to be observed in the exercise of this power, provided the proceeding so prescribed does not, in any manner, abridge or affect the jurisdiction of this court.

The proceeding in the present case before the justice of the peace is clearly not a proceeding according to the course of the common law. His jurisdiction over the subject matter of the controversy, is derived from the constitution, and the mode of proceeding adopted in the case is prescribed by statute. It therefore, in our opinion, belongs to the class of cases in which the writ of certiorari would lie at common law; and therefore, if our conclusion in the premises is right, it follows as a necessary consequence, that so much and such portions of the enactments of the legislature, approved February 14th, and December 17th, 1838, already cited, as purport to make the judgment of the justice of the peace, pronounced in favor of the

plaintiff in such case, final, and inhibit this court, or a judge thereof in vacation, from issuing a writ of certiorari therein, and divest this court of its jurisdiction thereupon to hear, adjudicate, revise, and determine such case, is in conflict with, and repugnant to, the constitution of this State, and therefore null and void.

These questions being thus disposed of, it becomes our duty to consider, and determine upon, the validity of the proceedings and judgment of the justice of the peace, as shown by his return to the writ of certiorari.

The summons required the defendant, Anthony, "to answer unto William A. Dawdy, in an action on ac't," but it in no wise appears that any account whatever in favor of Dawdy against Anthony, was ever produced to the justice, or filed in the cause, while the return contains an abundance of proof that the proceeding was considered by the justice, as founded on a change ticket, purporting to have been drawn and issued for the purpose of circulation as change or currency, but it entirely fails to show that the instrument upon which the suit was founded, notwithstanding it purports to have been executed by the defendant, Anthony, was filed with the justice before the summons was issued against the defendant, according to the provisions of the 17th section of chapter 87, of the Revised Statutes. The summons, therefore, appears to have been issued without authority and contrary to law. It is a case within the principle adjudged in the case of *Reeves vs. Clark,* decided by this court at the last January term thereof, in which it was resolved, that the proceedings before a justice of the peace must legally show that the subject matter in controversy is within the jurisdiction; otherwise, the whole proceeding must be regarded as *coram non judice,* and void. In this case nothing appears as the foundation of the suit, of which the justice had jurisdiction. The summons appears to have been based upon an account, but no account appears to have been filed either before or after the summons issued; nor does the instrument, purporting to have been executed by Anthony, though copied in the transcript of the justice's proceedings, appear to have been at any time filed with the justice; consequently it cannot, in our opinion, be legally considered as the foundation of the suit, or more properly speaking,

as constituting the subject matter in controversy between the parties, because, to entitle it to be so considered, it must in some legal manner be made to appear that the summons and subsequent proceedings in the case were, in fact, based upon it, and that it constituted in reality a subject matter of controversy between the parties in the case. The return of the justice does not so establish this fact, and therefore *the proceeding before him appears to have been coram non judice,* and for this cause ought to be, and it is hereby, quashed.

There is another case of the same nature and character now before the court, which is, of course, determined by this.