Tony A. LEE *v.* Andre McNEIL, Chancellor and Probate
Judge; David L. Reynolds, Circuit Judge; and M. Watson
Villines, Circuit-Chancery Judge

CR 91-153                                          823 S.W.2d 837

Supreme Court of Arkansas
Opinion delivered January 27, 1992

*Charles E. Clawson* and *Phil Stratton*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The petitioner, Tony Lee, has been charged with the criminal offense of fourth offense driving while intoxicated (Ark. Code Ann. §§ 5-65-103 and 111 (1987)). Lee is set to stand trial for this offense in Faulkner County Circuit Court. Lee has filed a petition for a writ of prohibition from this court to the Faulkner County Circuit Court requesting that this court prohibit his upcoming trial; Lee contends in his petition that the circuit court would not have jurisdiction over his criminal case because the judge who will preside over his case is the respondent chancellor, Andre McNeil, who would be sitting as circuit judge pursuant to an exchange agreement and docket division agreement within the twentieth judicial district.

Judge McNeil is the duly elected, authorized, and acting judge of the chancery and probate courts of the twentieth district. The respondent, David Reynolds, is the duly elected, authorized, and acting judge of the circuit court of the twentieth district, and the respondent, Watson Villines, is the duly elected, qualified, and acting judge of the circuit-chancery courts of the twentieth district.

After being sworn in on January 1, 1991, as judges of their respective courts, the three judges entered into an exchange agreement on February 5, 1991, by which the courts of the twentieth district were divided into three divisions. Lee asserts 1) that the judges of twentieth judicial district had no legislative authority to divide the district into divisions, and 2) that Judge McNeil and Judge Reynolds are usurping power of other courts within their district. We agree.

Arkansas Code Ann. § 16-13-201 (1987) addressed the jurisdiction of circuit courts and provides in pertinent part as follows:

> (a)   Circuit courts shall have original jurisdiction of all actions and proceedings for the enforcement of civil rights or redress of civil wrongs, except when exclusive jurisdiction is given to other courts. Where those actions and

proceedings are not expressly provided for by statute, the actions and proceedings may be had and conducted by the circuit courts and judges, in accordance with the course, rules, and jurisdiction of the common law.

*    *    *    *

Arkansas Code Ann. § 16-13-304 (Supp. 1989) addresses the jurisdiction of chancery courts and provides in pertinent part as follows:

(a)   Chancery courts shall have original jurisdiction in all matters in equity as fully as that exercised by the circuit courts of this state in counties where no separate chancery courts have been established prior to April 27, 1903.

(b)   Notwithstanding the provisions of the Arkansas Juvenile Code of 1989, or any other enactment which might be interpreted otherwise, the chancery court or any division of chancery court shall have jurisdiction for all cases and matters relating to paternity.

Arkansas Code Ann. § 16-13-2803 (Supp. 1989) addresses the judges and chancellors of the twentieth district and provides as follows:

(a)   The qualified electors of the Twentieth District shall elect:
(1)   One (1) circuit judge;
(2)   One (1) chancellor; and
(3)   One (1) circuit-chancery judge.

(b)(1)   Each judge of the judgeship created by subdivision (a)(3) of this section shall be the judge of the juvenile division of chancery court. The judge shall serve as judge of the juvenile division in lieu of the judge who would otherwise be designated as judge of the juvenile division of chancery court in the chancery district.

(2)   The judge of the additional circuit-chancery judgeship created in subdivision (a)(3) of this section shall devote such time as may be required to perform the duties of judge of the juvenile division, which duties shall be the primary obligation of the judge, and shall sit as judge of the circuit, chancery or probate court as time permits.

■ In this case, the judges entered of record an exchange agreement, which ordered in part that there be set up within the twentieth judicial circuit three divisions of each of the following courts: 1) chancery court, 2) circuit court; and 3) juvenile court. Although the State argues that this agreement is authorized under Ark. Const. art. 7, §22 and Ark. Code Ann. § 16-14-403 (1987), we find otherwise.

Article 7, § 22 provides that "[t]he judges of the circuit courts may temporarily exchange circuits or hold court for each other under such regulations as may be prescribed by law." Section 16-14-403 incorporates this constitutional provision and addresses the exchange of districts among judges and provides as follows:

(a)(1)   Circuit judges and chancellors of their respective districts of this state may by agreement temporarily *exchange districts* and may hold courts for each other for such length of time as may seem practicable and for the best interest of their respective districts and courts.

(2)   The agreements shall be signed by the judges so agreeing and entered on the record of the court or courts so to be held.

(b)   It is the intent and purpose of this section:

(1)   *To permit circuit judges to exchange districts with each other*;

(2)   *To permit chancellors to exchange districts with each other*;

(3)   *To permit circuit judges to exchange districts with chancellors*; and

(4)   *To permit chancellors to exchange districts with circuit judges.*

(Emphasis added.)

The State's argument fails to recognize that the statutory authorization for the exchange of districts among judges does not provide for the creation and exchange of divisions among circuit and chancery judges within a district. The exchange contemplated and authorized in section 16-14-403 is inter-district in

nature, as compared to the intra-district exchange attempted by the judges in this case.

■ The judges of the twentieth district are, therefore, without legislative authority to alter, as among themselves, the duties and responsibilities they assumed upon their election to their respective positions. *Cf.* Ark. Code Ann. §§ 16-13-1503(b)(2) and 16-13-2603(a)(2)(B) (Supp. 1991) ("The circuit judges, chancery judges, and circuit-chancery judges of the districts subject to this subsection [seventh and eighteenth respectively] may, by agreement, hold either of the circuit or chancery courts in their respective districts and may hear and try matters pending in any of those courts or may hear or try matters in the same court at the same time. The judges subject to this subsection may adopt such rules as they deem appropriate for the assignment of cases in the circuit and chancery courts of their district.")

Arkansas Const. art. 7, § 4 addresses the jurisdiction and powers of the Arkansas Supreme Court and provides "[t]he Supreme Court . . . shall have a general superintending control over all inferior courts of law and equity; and, in aid of its appellate and supervisory jurisdiction, it shall have power to issue writs of . . . mandamus . . . ."

■■ In *Hobson* v. *Cummings*, 259 Ark. 717, 536 S.W.2d 132 (1976), this court noted that the writ of prohibition lies to a court, not a judge. Consequently, Lee's petition for a writ of prohibition is inappropriate. However, in that case, the petitioner's pleading was treated as a petition for mandamus in directing the judge in that case to refrain from a particular action. Mandamus is a remedy to be used on all occasions where the law has established no specific remedy and justice and good government require it; it is a writ that is used to enforce an established right. *State* v. *Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989).

■■ The right that Lee seeks to enforce is contained in section 16-13-2803, which created a right in the people to select by the election process separate persons to serve as circuit, chancery, and circuit-chancery judges for the twentieth district. The only practical method of enforcing this right is the remedy of mandamus. *Quo warranto* is not appropriate because it is the

State that initiates that proceeding under these circumstances, not an individual such as in this case. *State* v. *Craighead County Bd. of Election Comm'rs, supra* (citing Ark. Code Ann. § 25-16-704 (1987)); *Cummings* v. *Washington County Election Comm'n*, 291 Ark. 354, 724 S.W.2d 486 (1987); and *McKenzie* v. *Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973)).

Consequently, we treat Lee's petition for writ of prohibition as one of mandamus and direct the respondent judges to refrain from judicially enlarging their respective jurisdictions.

Accordingly, the petition for writ of prohibition is denied, and the writ of mandamus is granted.

NEWBERN, J., concurs.

HAYS and CORBIN, JJ., dissent.

DAVID NEWBERN, concurring. The result reached by the Court's opinion is correct, and I join it without reservation. I cannot let the case go by, however, without expressing again my concern about the need for revision of Article 7 of the Constitution of Arkansas.

The original scheme of Article 7 was for the circuit courts to have general jurisdiction except in probate matters, and the circuit judges were to be the judges of the probate courts as well. Section 11 provides, "The circuit court shall have jurisdiction in all civil and criminal cases the exclusive jurisdiction of which may not be vested in some other court provided for by this Constitution." Section 15 provides, "Until the General Assembly shall deem it expedient to establish courts of chancery the circuit court shall have jurisdiction in matters of equity. . . ." Prior to Amendment 24, Section 34 provided for probate jurisdiction in the county courts. Amendment 24 placed it with the court exercising equity jurisdiction. If chancery courts had not been created, the circuit judges would have had jurisdiction of all civil matters except the minor ones assigned to the lower courts and probate courts. The circuit judges would, however, have presided over the probate courts. Had the chancery courts not been created by the General Assembly, the judges of the Twentieth District would presumably all be circuit judges, able to preside as their exchange agreement proposes. Now that we have all these courts, there is no doubt that Article 7 contemplates them as being

separate from each other.

Given the separation of the courts, operation of one judge in another's bailiwick requires "exchange." Section 22 makes it clear that the judges of the circuit courts may only exchange circuits "temporarily," and yet the plan and agreement among the Twentieth District judges makes eminently good sense. No one could doubt the efficiency to be achieved. The fact that the General Assembly has already given one of the responsibilities as both a chancellor and circuit judge is indicative that the duties can be combined, at least to that extent.

The citizens of this State should be given an opportunity to revise Article 7. *See Griffin* v. *State*, 297 Ark. 208 at 217, 760 S.W.2d 852 at 857 (1988) (Newbern, J., dissenting). *See also Arkansas State Medical Board* v. *Leipzig*, 299 Ark. 71 at 74, 770 S.W.2d 661 at 663 (1989) (Newbern, J., dissenting); *Malakul* v. *Altech Arkansas, Inc.*, 298 Ark. 246 at 253, 766 S.W.2d 433 at 437 (1989).

STEELE HAYS, Justice, dissenting. The obvious and increasing need for the efficient operation of the judicial system and the wise use of judicial resources mitigate in favor of inventive measures like the one before us. Such devices should be sustained except where invalidity is clear. I respectfully suggest the majority opinion fails to demonstrate that invalidity.

To begin with, petitioner's remedy, if he is dissatisfied with the outcome of his trial, is by appeal rather than by mandamus, and I would not undermine our precedents, and there are many, that "mandamus will not be granted when there is a remedy by appeal." *Burks* v. *Mobley*, 245 Ark. 43, 430 S.W.2d 859 (1968); *Mears* v. *Hall*, 263 Ark. 827, 569 S.W.2d 91 (1978).

Second, the majority rests its decision on the argument that, unlike an exchange of districts, which is authorized by Ark. Code Ann. § 16-13-403 (1987), there is no similar authorization for an exchange of *divisions* within a district. However, the majority has cited no supporting authority for its position that an "intra-division" exchange agreement requires legislative sanction.

Contrary to the majority's contention, an express legislative conferrence of power is not required for the judges to execute this agreement. Rather, the agreement is authorized and enabled

because it is already encompassed within the "inherent powers" of a court, which powers we have long recognized:

> *Besides the powers . . . specially granted by the constitution to the circuit courts, they possess certain other powers, which appertain to all judicial tribunals,* and vest in them of necessity upon their creation, and by the simple act creating them. . . .

*Anthony, Ex Parte,* 5 Ark. 358 (1843). Similarly it is stated in *State* v. *Morrill,* 16 Ark. 384, quoting from *United States* v. *Hudson,* 7 Cranch 32 (1805).

> *Certain implied powers must necessarily result to our courts of justice from the nature of their institution.* To find for contempt, imprison for contumacy, enforce the observance of order, etc., are powers that cannot be dispensed within a court because they are necessary to the exercise of all others; and so far our courts no doubt possess powers not immediately derived from statutes. . . .
> *The legislature may regulate the exercise of but cannot abridge the express or necessarily implied powers granted to this court by the Constitution.* [My emphasis.]

A court's inherent powers are universally recognized:

> *The phrase "inherent powers" is used to refer to powers included within the scope of a court's jurisdiction which a court possesses irrespective of specific grant by constitution or legislation.* Such powers can neither be taken away nor abridged by the legislature. . . . The inherent powers of a court do not increase its jurisdiction; they are limited to such powers as are essential to the existence of the court and necessary to the orderly and efficient exercise of its jurisdiction. . . . *Courts have inherent power to do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction.* [My emphasis.]

20 Am. Jur. 2d, *Courts* § 78, 79 (1965).

Recently, in discussing an enabling act passed by the legislature this court adverted to a court's inherent powers:

[The enabling act] merely recognizes and is harmonious with this court's inherent powers rather than conferring an express power.

*Miller* v. *State*, 262 Ark. 223, 555 S.W.2d 563 (1977); *Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986).

As to the specific power exercised by the respondents, other jurisdictions have recognized the implied authority in coordinate judges of a jurisdictional territory to exchange with coordinate courts of the same territory. *See State ex re. MacNish* v. *Landwehr*, 60 S.W.2d 4 (1933); *Kruckenberg* v. *Powell*, 442 So. 2d 994 (1982). It is stated in *Kruckenberg*:

The assignment and reassignment of specific court cases between or among the judges of a multi-judge court is a matter within the internal government of that court and is directed and controlled by policy adopted by the judges of that court. . . . *Every duly elected or appointed judge or a court has the bare power or authority to exercise all of the jurisdiction of that court.*

The only limitation on the court's exercise of its powers is that any rule be "reasonable" and neither enlarge nor restrict the jurisdiction of a court. Any rules must of course "harmonize with and cannot render nugatory, or materially modify, statutory provision, and must not conflict with constitutional provisions." 20 Am. Jur. 2d, *Courts* § 84 (1965); *see also Thomas* v. *Arn*, 474 U.S. 145 (1985). No such conflict has been noted by the majority.

The majority opinion avoids topical discussion, but the implication exists that this device for an improved judicial operation is perceived by the majority as flawed because of the distinction between courts of law and equity inherent in the common law and retained anachronistically in Arkansas. But that aspect was addressed soundly and in depth by Justice Frank G. Smith in *McEachin* v. *Martin*, 193 Ark. 787, 102 S.W. 864 (1937). In *McEachin*, Judge Irby, Chancellor of the 8th Chancery District, under an agreement for exchange of courts with Judge Holt, circuit judge of the Boone Circuit Court, presided over a personal injury case. I quote, necessarily at some length, from that opinion:

Act 160 of the Acts of 1933, page 490, expressly authorizes

circuit judges and chancellors of the state to temporarily exchange courts and districts by agreement, for such length of time as may be practicable and for the best interest of their respective circuits and districts and courts. The act declared the intent and purpose thereof to be "*** to permit circuit judges to exchange circuits with each other; to permit chancellors to exchange districts with each other; and to permit circuit judges to exchange circuits with chancellors; and to permit chancellors to exchange districts and circuits with circuit judges." Authority for the exchange between Judge Holt and Chancellor Irby appears ample if act 160, *supra*, is valid legislation. Is it such?

***

It was provided by § 22 of art. 7 of the Constitution that "The judges of the circuit courts may temporarily exchange circuits or hold courts for each other under such regulations as may be prescribed by law." We think it obvious that the words "circuit courts" were used in a comprehensive sense, including within their meaning chancery courts as well. Throughout the judicial history of the state no one ever questioned the right of one circuit judge who had exchanged circuits with another judge to exercise the full jurisdiction possessed by the judge with whom the exchange was made. For the purpose and during the time covered by the exchange agreement each judge possessed all the powers and jurisdiction of the judge with whom he had exchanged. He was both circuit judge and chancellor, because chancery courts were comprehended and included in the words "circuit courts." That § 22, above quoted, refers alike to courts having chancery jurisdiction as well as to circuit courts or, rather, intended both courts to be comprehended by the words "circuit courts," in § 21 of art. 7. This section provides that "Whenever the office of judge of the circuit court of any county is vacant at the commencement of a term of such court, or the judge of said court shall fail to attend, the regular practicing attorneys in attendance of said court may, on the second day of the term, elect a judge to preside at such court." If the words "circuit courts" did not

comprehend and include chancery courts as well, then no authority existed for the election of a presiding judge possessing chancery jurisdiction.

***

Chancellors have, under the Constitution, the same right to exchange which circuit judges have, and there is no limitation of this power restricting the right of a circuit judge to exchange only with another circuit judge or a chancellor to exchange only with another chancellor. It is, therefore, the opinion of the writer, and of Justices Humphreys, McHaney and Baker, that chancellors may exchange with circuit judges as well as with other chancellors.

Furthermore, legislative intent favoring exchange is expressed more than once, with regard to statutes on the exchange of districts. *See* e.g. *Act 1961, No. 135, Preamble.* Construction of constitutions and statutes providing for judges of one district to hold court in another district, is generally considered remedial and should be liberally construed with a view to promoting the ends of justice. 48A C.J.S. *Judges*, § 73 (1981).

CORBIN, J., joins.